# APPEAL OF PARDON T. BARBER, ET AL.

## [ESTATE OF WILLIAMS BARBER, DECEASED.]

### FROM THE DECREE OF THE ORPHANS' COURT OF LUZERNE COUNTY.

Argued April 15, 1889—Affirmed at Bar.

*(a)* W. B., who died in 1875, bequeathed his estate to his widow for life, with remainder to his children. The estate consisted chiefly of judgments against a son which were liens on certain land. In 1877 this land was sold, on judgments subsequent to W. B.'s, to " C. W., executor of W. B."

*(b)* By agreement of the parties, C. W. took title as trustee for P. T. B., who furnished the costs, the only consideration paid, to the extent of said consideration, and as executor, to the extent necessary to pay W. B.'s debts, and then as trustee for the use of W. B.'s heirs.

*(c)* In 1884 the widow died. In 1885 C. W., as " executor and trustee," sold the land at public sale for less than its value, and without order of court. He made no return of the sale and did not account for the proceeds. The land had been occupied meantime by P. T. B.

*(d)* At the sale in 1885, notice was given by the heirs that there were no debts of the estate, and that C. W. had no authority to make the sale. In 1887 the heirs, including P. T. B., petitioned the Orphans' Court which had jurisdiction over W. B.'s estate, to set aside the sale.

1. In such case, the Orphans' Court had no jurisdiction. No creditor complained, and after the sale of 1885 C. W. held title, not as executor under the will, but as trustee for P. T. B. and for the heirs, by their own agreement, and the estate of W. B., as such, was no longer interested.

Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS and MITCHELL, JJ.

No. 132 July Term 1888, Sup. Ct.

On October 3, 1887, Pardon T. Barber et al., heirs at law of Williams Barber, deceased, none of whom were minors, filed a petition for a citation against Coleman Wells, executor under the will of said decedent, S. J. Strauss and Edmund Gumaer, to show cause why a sale of real estate made by said Wells should not be set aside. Citation issued.

On November 5, 1887, the respondents filed an answer, and

after replication and proofs, the cause was heard by the court, without the intervention of an auditor or master.

The facts are stated in the opinion of the court below, RHONE, P. J., which was as follows:

This decedent died in 1875, leaving a will bequeathing the use of his estate during life to his widow, with remainder to his children in equal shares. The widow died in 1884. A large part of the estate consisted of judgments against Ira T. Barber, a son, which indebtedness was for purchase money of land. In 1877, Sidney Finn, also a creditor of said Ira T. Barber, issued an execution and sold the land in question to "Coleman Wells, executor of Williams Barber, deceased," and deed therefor was made by the sheriff September 24, 1877.

On the day of the said sheriff's sale the said Coleman Wells executed and delivered to Pardon T. Barber, a son of the decedent, the following memorandum:

"LUZERNE COUNTY, ss.:

| | |
|---|---|
| SIDNEY FINN, | No. 449 October Term 1876; Pluries |
| v. | Vend. Ex., No. 859 September Term |
| IRA T. BARBER. | 1877. |

"Real estate sale on 8 September, 1877, by Wm. P. Kirkendall, sheriff, of defendant's property in Benton township, Luzerne county, Pa., to Coleman Wells, executor of Williams Barber, deceased, for two hundred dollars; deed to be made to Coleman Wells, executor, &c.; money receipted on said writ by the sheriff as paid by me.

"Now, this is to certify, that the purchase money mentioned · and receipted on writ, together with one dollar and fifty-six cents additional for costs, in all $201.56, was furnished me by Pardon T. Barber solely, and was and is not the property of myself or of the estate of Williams Barber.

(Signed) COLEMAN WELLS."

The said agreement has been further explained to mean that Wells took and held the title to the land in question as a trustee for Pardon T. Barber to the extent of the money advanced by him as aforesaid, and as executor of the estate of Williams Barber to the extent necessary to pay the debts of the estate and expenses of administration, and then for the use

of the heirs of the estate. Wells has never had possession of the property. Pardon T. Barber has held the possession for many years without leave, or accounting to any one.

In April, 1885, Wells, as "executor and trustee," sold the land at public sale without an order from court; he has made no return of the sale, nor has he accounted for the proceeds. At the sale, notice was read and given that there were no debts of the estate, and that the executor had no right to make the sale. A request was made to have the sale adjourned, until the right of the executor to make the sale without an order of court could be further investigated. This sort of protest against the sale was entered into by all the heirs of the decedent, except the mother of Edmund Gumaer, who became the purchaser of one of the farms, and she was only silent, that is, did not insist upon a sale. The executor insisted upon completing the sale then and there, and sold one farm worth at least $3,000 to Edmund Gumaer, for $455, and he sold the other farm to S. J. Strauss for $50, which was worth at least $1,000.

The said Gumaer is a grandson of the decedent, was present at the sale and heard the said notices read and given. He is still owner of the title. The said Strauss was not at the sale. He was and is a co-office-tenant with G. L. Halsey, Esq., who acted as attorney for the executor in making the sale. It seems he instructed Mr. Halsey to bid off the property for him, if it were sold cheap. For Halsey's friendship in the matter he received $100 from Mr. Strauss. A Mr. Zimmerman is now the owner of the Strauss title, but he had notice of the clamor made by the heirs against the sale.

The purchase money has been paid or secured, and the executor has delivered his deeds to the purchasers.

Those heirs who are petitioners presented their petition in this court to set the sale aside on October 3, 1887, and have made no other objection to the sale in this court.

The said purchasers have commenced an action of ejectment against P. T. Barber to recover possession of the land.

It does not appear to us that either the executor or his attorney made the sale in the reckless, hasty manner in which it was made, for the purpose of committing a fraud. It would seem that they had no object but to get rid of the title with

the least trouble and expense possible, regardless of the best interests of the heirs. The effect of the sale was to sacrifice the property to the extent of about $3,500.

No valid, subsisting debt has been shown against the estate since the executor's purchase, and from the length of time which has elapsed it seems probable that none exists.

In April, 1887, the executor died insolvent.

With this state of facts, what right have we to wrest from the purchasers their title, whether it be good, bad or indifferent? No creditor of the decedent exists to complain of the manner of making the sale, and the "heirs" entered into their own contract or trust relation with the executor. So far as Wells held the title for the heirs, he held, not as executor of the decedent, but as their own creature, their agent or trustee; and, so far as he held it solely for Pardon T. Barber, he also held it extra the will and extra his office as executor, and in either case we have no jurisdiction. There being no creditors, and, having entered into express trust relations with the heirs, the executor did not purchase and hold by virtue of his office as executor, as was the case in Billington's App., 3 R. 55; Oeslager v. Fisher, 2 Pa. 467; Johnson v. Bliss, 11 W. N. 293, and Fell's Est., 9 W. N. 382. Nor does this case come within the rule of law laid down in Johnson's App., 114 Pa. 132, for at least two reasons: first, there the purchaser voluntarily tendered his deed to the court for cancellation, and second, the sale was made and the deed delivered by virtue of an order of the court, which therefore gave the court jurisdiction over both the estate, the officer and the purchaser.

We do not charge the executor with fraud. At most he was guilty only of mismanagement which resulted in securing an inadequate price for the land, and for this cause we might have set the sale aside at any time before the delivery of the deed. Before the sale we might have restrained the executor from making the sale, upon showing that the estate, as such, was likely to be jeopardized. But, having acquiesced in the sale so long, the matter has gone beyond our control. The estate of Williams Barber, deceased, is not, as such, any longer interested.

Since the delivery of the deed, it may be that we have authority to surcharge the executor's estate when the account

is filed. Perhaps a court of equity may have authority to declare the sale void for want of authority to make it. Perhaps an action at law will lie against the executor's estate for damages. Perhaps the heirs may make their defence successfully in the action of ejectment now pending. No matter, however, whether any opportunity exists elsewhere or not, to have the case decided upon its merits, it seems clear to us that this court is now powerless to afford the relief prayed for, and the petition is therefore dismissed at the costs of the petitioners.

The petitioners thereupon took this appeal, alleging that the court erred in deciding that it was without jurisdiction in this proceeding, and in dismissing the petition.

*Mr. H. M. Hannah* (with him *Mr. C. H. Soper*), for the appellants.

*Mr. Paul R. Weitzel* and *Mr. R. A. Zimmerman*, for the appellees.

PER CURIAM.
On the argument at bar.

Judgment affirmed.