## Edmund Gumaer v. Pardon T. Barber, Appellant.

*Ejectment—Trusts and trustees—Executors and administrators.*

In an action of ejectment it appeared that the land in controversy had been originally owned by B.; that before B.'s death his son, T., became the owner of the land, B. holding judgments which were a lien upon it; that after B.'s death, another judgment creditor of T. issued execution, and the land was advertised to be sold by the sheriff. The defendant offered testimony tending to show that certain of the heirs of B., wishing to retain the land in the family, entered into an agreement by which W., B.'s executor, was to bid in the land which was to be free from the lien of B.'s judgments in which all his heirs had an interest; and the interest of the heirs in the judgments was to be thereafter represented by the land; that the heirs agreed to furnish what money should be required in addition to the judgments, and W., B.'s executor, was to bid in the land. W. bought the land at the sheriff's sale. The purchase money was furnished by P., one of B.'s children, and the title was made to W., who gave P. a receipt showing that the money had been furnished by P. solely, and not by W. or by B.'s estate. P. went into possession of the land, and continued in undisturbed possession for eight years, treating the land as the property of himself and his brothers and sisters. He never paid rent to W., and he purchased at private sale the interests of two of his brothers. Eight years after the sheriff's sale W., as executor, sold the land at public sale to the plaintiff, who had notice of the interests of B.'s heirs. There was evidence that the motive which prompted W. to sell the land was resentment against one of B.'s sons. *Held*, (1) that if W. bought the land at the sheriff's sale as executor, the land continued personalty for purposes of distribution under the will, and the plaintiff took a good title at the executor's sale; (2) that if W. bought for the heirs with their money and judgments, in pursuance of an agreement with them, then he was a trustee for them, wholly independent of the will, and they having the whole beneficial interest, he had no authority to sell without their consent; (3) that it was for the jury to determine whether W. bought the land as executor or as trustee for the heirs.

Argued Feb. 23, 1897. Appeal, No. 511, Jan. T., 1896, by defendant, from judgment of C. P. Lackawanna Co., Nov. T., 1892, No. 132, on verdict for plaintiff. Before WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Ejectment for a tract of land in Benton township. Before EDWARDS, J.

The facts appear by the opinion of the Supreme Court.

Verdict and judgment for plaintiff. Defendant appealed.

*Error assigned* among others was (3) portion of the charge quoted in the opinion of the Supreme Court.

*Charles H. Soper,* for appellant.—Where, upon a purchase of property, the conveyance of the legal estate is taken in the name of one person while the consideration is given or paid by another, the parties being strangers to each other, a resulting or presumptive trust immediately arises by virtue of the transaction, and the person named in the conveyance will be a trustee for the party for whom the consideration proceeds : 2 Bouv. Law Dictionary, 586 ; Perry on Trusts, sec. 126 ; 4 Kent Commentaries, 300 ; Kisler v. Kisler, 2 Watts, 323 ; Lessee of German v. Gabbald, 3 Binn. 304 ; Jackman v. Ringland, 4 W. & S. 149 ; Lynch v. Cox, 23 Pa. 265 ; Beck's Exrs. v. Graybill, 28 Pa. 66 ; 10 Am. & Eng. Ency. of Law, p. 5 et seq. ; Zimmerman v. Barber, 176 Pa. 1.

Admitting that some of their heirs were ignorant of the arrangement made between Barber and Wells, under the circumstances, Wells had no authority to sell: 27 Am. & Eng. Ency. of Law, 25, 30, 35, 44; Wiswall v. Ross, 4 Port. (Ala.) 321; Titchenell v. Jackson, 26 W. Va. 460 ; Roberts' App., 92 Pa. 407; Kitchem v. Bedford, 13 Wall. (U. S.) 413 ; Barrell v. Joy, 16 Mass. 221; Doe v. Harris, 16 M. & W. 517 ; Union Mut. L. Ins. Co. v. Campbell, 95 Ill. 267 ; Saunders v. Harris, 1 Head (Tenn.), 185 ; Furman & Co. v. Fisher, 4 Coldw. 626 ; Kemp v. Porter, 7 Ala. 138; Shepherd v. McEvers, 4 Johns. Ch. (N. Y.) 136 ; Berly v. Taylor, 5 Hill (N. Y.), 577 ; Swanson v. Tarkington, 7 Heisk. (Tenn.) 612.

It has been held that a trust beneficial to the trustee will be presumed to have been accepted in the absence of anything to the contrary, especially after a long period of time has elapsed without any disclaimer: Read v. Robinson, 6 W. & S. 331; Eyrick v. Hetrick, 13 Pa. 494 ; Penny v. Davis, 3 B. Mon. 313; Roberts v. Moseley, 64 Mo. 507 ; 27 Am. & Eng. Ency. of Law, 82.

If a tenant in common purchases with his own money, in the name of another, the estate in common at a tax sale, the purchase inures to the benefit of all the tenants in common : Tanney et al. v. Tanney, 159 Pa. 277 ; Meyers' App., 2 Pa. 463.

The man who pays the purchase money is supposed to

become or intends to become the owner of the property, and the beneficial title follows that supposed intention: Stewart v. Brown, 2 S. & R. 461; Lloyd v. Carter, 17 Pa. 216; Strimpfler v. Roberts, 18 Pa. 283; Lynch v. Cox, 23 Pa. 265; Beck v. Graybill, 28 Pa. 66; Brock v. Savage, 31 Pa. 410; Edwards v. Edwards, 39 Pa. 369; Williard v. Williard, 56 Pa. 119.

Where there is no immediate necessity for a sale, it will be a breach of trust in the trustee to bring on a sale under manifestly disadvantageous circumstances: Hill on Trusts, p. 712; Perry on Trusts, sec. 770; Lewin on Trusts, *423; Nixon's App., 63 Pa. 279; Bickel's App., 86 Pa. 204.

But it is claimed that this land was personal property in the hands of the executor and, therefore, he might sell it at auction the way he did. Suppose it was personal property in his hands, the doctrine of resulting trusts applies in all its phases to personal property as well as to real property: 10 Am. & Eng. Ency. of Law, 14; Bispham's Equity (4th ed.), 120; 1 Perry on Trusts (3d ed.), 146; 2 Pomeroy's Eq. Jr., sec. 1038.

A purchaser from the fraudulent grantee, with notice of the fraud, will take the title subject to all the infirmities with which it was affected in the hands of such fraudulent grantees: 8 Am. & Eng. Ency. of Law, 758; Wilcoxen v. Morgan, 2 Col. 478; Studabaker v. Langard, 79 Ind. 320; Evans v. Nealis, 69 Ind. 148.

*George M. Watson*, of *Watson & Zimmerman*, for appellee.— In reply to the third assignment of error, a portion of the learned court's charge, we say that there is certainly no doubt that the learned court clearly and correctly stated the law touching the doctrine of election and conversion as decided by this court in Beatty v. Byers, 18 Pa. 105; Reed v. Mellor, 122 Pa. 635; Mellon v. Reed, 123 Pa. 1; Smith v. Starr, 3 Wharton, 62; Stuck v. Mackey, 4 W. & S. 196; Miller v. Meetch, 8 Pa. 425; McFee v. Harris, 25 Pa. 102; Crowell v. Meconkey, 5 Pa. 168; Cooper v. Wilson, 96 Pa. 409.

OPINION BY MR. JUSTICE DEAN, July 15, 1897:

Williams Barber, of Benton township, Lackawanna county, died in 1875, leaving to survive him a widow and eight children, among them a son, this defendant. The decedent left a will,

of which he appointed Coleman Wells the executor. He devised a life estate to his widow in all his lands and, at her death, provided for an equal division of his estate among his children. Early in life, he had purchased a farm consisting of two separate tracts, one containing thirty-nine acres, the other fifty acres ; on this farm he resided for many years, and reared his family; but in 1862, twelve years before his death, he conveyed the fifty acre tract to his son George, who conveyed to his brother Ira T. Barber, the father holding judgments from his son Ira in his favor for a larger part, if not the whole, of the purchase money, which at his death were subsisting liens on the land. Ira remained in possession of the land purchased until 1877, two years after the death of his father ; but in 1876 one Sidney Finn obtained a judgment against him for $264, which was a lien junior to those of the father ; Finn seized the land by execution on this judgment, and it was offered at sheriff's sale. All the children were desirous the land should not be sold and pass into the hands of strangers; all had an interest in the prior judgments in favor of the father's estate. They, it was alleged by defendant, through him, consulted with Wells, the executor, and it was agreed the land should be bid in for them, and their interests thereafter should be represented by the land instead of by judgments. Pardon Barber and his brothers raised the money necessary to pay in excess of the judgments, and the liens it was agreed should be discharged by the purchase ; it was arranged that Wells should do the bidding, and the property was knocked down to him at a bid of $200, and the deed acknowledged accordingly. On the same day, Wells delivered to Pardon Barber a receipt, as follows :

" Real estate sale on the 8th of September, 1877, by William P. Kirkendall, sheriff, of defendant's property in Benton township, Luzerne County, Pa., to Coleman Wells, executor of Williams Barber, deceased, for two hundred dollars : deed to be made to Coleman Wells executor, etc., money receipted on said writ by the sheriff as paid by me.

" Now this is to certify that the purchase money mentioned and receipted on writ, together with one dollar and fifty-six cents additional for costs, in all $201.56, was furnished me by

Pardon T. Barber solely, and was and is not the property of myself or of the estate of Williams Barber.

" COLEMAN WELLS."

Finn being unable to pay the purchase money on a bid sufficient to reach his judgment, it was agreed by all parties that he should receive all the money on a bid of $200, and it was accordingly paid over for his benefit.

Pardon Barber immediately went into possession of the land, and so remained up until the spring of 1885; Wells neither demanding nor receiving rents; Pardon Barber treating the land as the property of himself and brothers and sisters; he even purchased at private sale the interests of two of his brothers. In the spring of 1885, eight years after Pardon Barber went into possession, Wells, as executor of the father, by printed handbills gave notice that the property would be offered at public sale on the 5th of April; on that day he and his attorney appeared on the premises and offered the property at auction as the land of Williams Barber, the ancestor; immediately, the attorney for the heirs read a written notice in the hearing of all bidders that the property belonged to Pardon Barber and the other heirs of Williams Barber, and that a purchaser could take no title from the executor. Gumaer then asked if Wells, the executor, would give a warranty deed; his attorney replied no, that the purchaser would take such title as Wells had; the property was finally knocked down to Edmund Gumaer, this plaintiff, a grandson of testator, for $450, about one fourth of its value. Deed was executed to him by the executor. Pardon Barber continued in undisturbed possession until October 6, 1892, more than five years after the executor's sale, when Gumaer brought this ejectment. Wells, the executor, died in 1887, insolvent.

At the trial in the court below there was evidence on part of plaintiff that two of the eight heirs, Mrs. Wallace and Mrs. Gumaer, had not joined in the arrangement to purchase the land at sheriff's sale, and had not consented to appropriate their interests in the judgments as part of the purchase money. On part of the defendant there was testimony that Pardon Barber, at the request of all, raised the money to bid upon the property, and that it was purchased for all. In the opinion of the court

the question at issue was determined by the fact of whether all of the eight heirs were parties to the agreement. The following paragraph from the charge presents, we think, a fair statement of the court's view.

"Now, then, take this case; take the testimony of all the witnesses; start in the beginning previous to the time of 1877, and get down until April, 1885, and after that date the sale; take it all into consideration, and say whether you can by the fair weight and preponderance of the evidence in this case find that all the heirs of Williams Barber made an election to take this property as real estate. If you can find that, then your verdict will be for the defendant. But if you do not find that, if you find that any one or more of the heirs of Williams Barber did not join in this election, or that they all of them did not make an election, then you would have a right to find a verdict for the plaintiff."

Under this instruction there was a verdict for plaintiff, and defendant appeals, assigning several errors, among them, the charge of the court in substance as quoted.

The real question in the case, and the one on which it must turn, is what was the nature of the title which Wells took by his sheriff's deed, as against Pardon Barber, the representative of the heirs? For the purchaser at the executor's sale took the executor's title; no better one. If the executor before sale had brought ejectment against Pardon Barber could he have recovered the land? If at the sheriff's sale he took an absolute title in the land as executor, he was entitled to possession; if he took the title in trust for Pardon Barber and the heirs, he could not recover the land, even if one or more of the heirs successfully denied their consent to the trust; they, in such case, were entitled to an accounting from the executor as to their share of the judgments, but as they had not agreed that land should be substituted for the interests in the judgments they could not in the face of such an assertion claim land. But, if the executor bought the land at the sheriff's sale in his representative capacity for the estate, the land still continued personalty for purposes of distribution under the will, and the purchaser, Gumaer, took a good title at the executor's sale. In other words, if he bought for himself as executor he was a trustee under the will, and he had the right to dispose of the farm. If he bought for

the heirs in pursuance of an agreement with them, with their money and judgments, then he was a trustee for them, wholly independent of the will, and they having the whole beneficial interest, he had no authority to sell without their consent.

What does the evidence show as to the purchase at the sheriff's sale? It is undisputed that before the sale Pardon Barber and five others, six out of the eight, desired to purchase the land and substitute it for their interests in the judgments; that Pardon was authorized to go to Wilkes-Barre, attend the sale, and, if possible, have it bid in for the heirs; two of the eight deny they were parties to the agreement; we think the decided preponderance of the evidence shows that they also desired and authorized the arrangement, but, assume that these two did not consent; Pardon, assuming to act for and to represent the eight, raised money to bid and arranged with Wells that he should do the bidding. For whom and with whose money did Wells buy? He explicitly states in the receipt that the money was furnished by Pardon Barber, and was not the property either of himself or the estate, although the deed was taken in his name. O. F. Nicholson, the attorney who drew the receipt, after stating the circumstances under which it was given, sums up his testimony in this language: " The intention was, as I understood it, that Coleman Wells was to hold the legal title for the heirs or family of Williams Barber, and to show that Pardon Barber furnished the money to make the purchase. That was the intention of the parties as expressed at or about the time that paper was prepared." Notice next Wells's conduct afterwards; Pardon Barber goes into possession of the property and so remains for eight years without a single attempt of Wells to exercise an act of ownership. Barber farms it, makes improvements, pays all the taxes, purchases the interests of two of his co-owners. While in possession he paid, at the request of Wells, between two and three hundred dollars of debts owing by the estate. Is it credible that an executor bound to collect the income of land for which he must account to all the heirs was thus totally indifferent to his duty and interests? His first attempt to assert control was to offer the property for sale in 1885. When called upon and his authority for such a step demanded, he said to counsel for the heirs, " He knew of no debts against the property at that time, and if it was not for the fact that Ira Barber

who was connected with it had acted the hog, he would not have undertaken to sell the property."

It seems to us there was ample evidence, if the jury believed it, taken in connection with the paper to show that Wells took the legal title to the land in trust for the heirs; he took the land for them and paid for it with the money or judgments of all of them; it was not in his power, out of resentment or for any other reason of his own, without their consent, to arbitrarily turn it back into money. The moment it was purchased and the deed taken in pursuance of the agreement to purchase, the legal title was in him, not as executor but as trustee for them, they having the right in equity to demand a conveyance. It was a dry trust; one in which the trustee had no duty to perform. The reason for making the deed to him instead of directly to Pardon Barber, one of the heirs, is stated by the two attorneys, Nicholson and Chase. Wells did not trust Barber, and was afraid he would not hold the land for the heirs. If the former chose to put himself in that position without the consent of one or more he was answerable to the nonconsenting parties for their share of the judgments which he, without authority, had turned into land; and if he had so accounted to them, equity would have substituted him to the ownership of the land to the extent of such interests. The case of Miller v. Meetch, 8 Pa. 417, cited by counsel for appellees, is not an authority to the contrary. There, the testator devised to his executors certain lands, and directed that they be converted into money for distribution among his children; it was held that the right of election to take land instead of money could not be exercised except by all the beneficiaries. That is not this case; the testator did not own this land; he only had liens against it. When the land was about to be sold on an independent lien, as alleged by defendant, the heirs agreed to buy and substitute the land for the judgments; for this purpose they agreed to put the legal title in the name of a trustee for their benefit; the trustee consented to take and so hold it. This was not for the purpose of fulfilling any provision of the will directing distribution, but was an agreement among themselves for the purchase of land they desired to own, consenting that the judgments should be used in payment of the purchase money. The arrangement is consummated; the land purchased and the conveyance taken;

the executor, who had the legal ownership of the judgments, appropriates them in payment of the purchase money. In doing so he was performing no duty enjoined by the will; he was a mere volunteer. If two out of eight did not consent to such use of the judgments, then they must look to the executor who so used the judgments without authority, just the same as if he had collected the money and refused to pay it over; the trust, as to the others, is unaffected.

Or suppose instead of judgments the executor had had, at the date of the sheriff's sale, $800 in cash belonging to these heirs; the property which had once belonged to their ancestor was in danger of passing to strangers; six out of the eight heirs request the executor to purchase it for their common benefit, and he bids it to $800, pays the purchase money with the whole fund in his hands, and takes the deed in his name for them; eight years after two of them deny giving authority to so use their money; that could not destroy the trust created by the original conveyance; whatever equitable right the trustee might assert as to the two eighths interests of those objecting. If he had acted under such circumstances for but one of the heirs, he constituted himself, to that extent, a voluntary trustee; assumed a relation to the one which he could not destroy by the mere arbitrary exercise of his will; legal and equitable titles to land are not thus changed from one beneficiary or owner to another.

We think the learned judge of the court below fell into error by assuming the land should be treated as a subject of a devise to the executors to be converted into money for distribution. If that had been the case, the instruction would have been correct, for the consent of all to retain it as land would have been necessary before the legal title of the executor under the will would have been divested. But when we consider that this was not the land of testator, but as alleged a purchase at the instance of the heirs, by a trustee for them, the rule has no application. We are of opinion the third assignment of error is sustained. It should be submitted to the jury to find from the evidence whether Coleman Wells purchased the land as a trustee for the heirs; if so, the verdict should be for defendant, even though it now appears that two or more of the heirs did not join in the agreement for such purpose. On the other hand, if he purchased in his official capacity as executor, to hold for the

purpose of future distribution under the will, he could thereafter make sale of the same under the will, and plaintiff took a good title. This is the real contention in the case, and the one on which the case should turn. The other assignments of error in this view are immaterial.

It is but fair to the learned judge of the court below to notice that this view of the case was not prominently presented to him by counsel for defendant; yet the exception to the charge and the third assignment of error compel us to pass upon it here. The same view, however, is distinctly intimated in the opinion of RHONE, P. J., of the orphans' court, in the matter of the petition of the heirs for a citation to the executor to show cause why the sale to Gumaer should not be set aside; that learned judge deciding that the orphans' court had no jurisdiction, as Wells did not hold the land by virtue of his office as executor, but extra the will, on an agreement between him and the heirs. See Barber's Appeal, 125 Pa. 564.

The judgment is reversed, and a v. f. d. n. awarded.